## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |  |
|---|---|---|
| JASON COOK; JENNIFER COOK; | } | |
| JENNIFER COOK, as parent and next | } | |
| friend of KALUM COOK, a minor; and | } | |
| JENNIFER COOK, as parent and next | } | |
| friend of GRIFFIN COOK, a minor; | } | |
|  | } | |
| **Plaintiffs,** | } | CASE NO. 6:10-cv-1713-SLB |
|  | } | |
| **vs.** | } | |
|  | } | |
| CITY OF SULLIGENT, ALABAMA; | } | |
| WILLIS STANFORD; MICHAEL | } | |
| BANKHEAD; TERRY PERKINS, | } | |
| SHERIFF; RODNEY JONES; | } | |
|  | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on Motions to Dismiss filed by defendants Terry Perkins, (doc. 32),[1] Rodney Jones, (doc. 34), Michael Bankhead, (doc. 35), City of Sulligent, Alabama, (doc. 37), and Willis Stanford, (doc. 39). Plaintiffs Jason and Jennifer Cook have brought claims on behalf of themselves and their minor children, Kalum and Griffin Cook, against the City of Sulligent, Alabama; Willis Stanford, the Chief of Police of Sulligent, Alabama; Michael Bankhead, Police Officer of the City of Sulligent, Alabama; Terry Perkins, Sheriff of Lamar County, Alabama; and Rodney Jones, Deputy Sheriff of Lamar County, Alabama. Plaintiffs allege violations of their Fourth and Fourteenth

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Amendment rights as well as violations of Alabama law.  (Doc. 31 ¶¶ 29-49.)  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the Motions to Dismiss filed by defendants Perkins and Stanford, (docs. 32 & 39), are due to be granted, and the Motions to Dismiss filed by defendants Bankhead, Jones, and the City of Sulligent, (docs. 34, 35, 37), are due to be granted in part and denied in part.  Jason Cook's excessive force claim under the Fourth Amendment and Jennifer Cook's unlawful seizure claim under the Fourth Amendment are not due to be dismissed; all other claims are due to be dismissed for failure to state a claim.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.  The purposes of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of the plaintiff's statement of claim for relief.  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court assumes the factual allegations in the complaint are true and gives plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that plaintiff can prove facts it has not alleged or that defendants have violated the law in ways that have not been alleged.  *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*  Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*,

655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

In a § 1983 case involving a defendant who could assert qualified immunity as a defense, "[a] district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations.  The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief."  *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

## II.  STATEMENT OF FACTS

In their Second Amended Complaint, (doc. 31), plaintiffs set out the facts as follows:

14.  Jennifer Cook was driving her family home on the evening of November 29, 2008. Her husband, Jason Cook, was a passenger in the front seat. Kalum Cook her eight year old son, and Griffin Cook, her three year old son rode in the back seat. At approximately 7:00 p.m. Lamar County Sheriff's Deputy Rodney Jones stopped the family for a bad headlight as they pulled into their own driveway. Deputy Jones approached the driver's side. Deputy Jones asked Mrs. Cook for her license and smelled alcohol. Deputy Jones asked her if she'd been drinking. She said no.

15. Mr. Cook then admitted to having an open container in the vehicle. While Deputy Jones took her license back to his squad car, Mr. Cook got out of the vehicle, poured out the beer on the ground (in his own yard), then tossed the can into the back of his vehicle. Deputy Jones asked Mr. Cook what he was doing. Mr. Cook responded that he was throwing a beer can in the back of his vehicle. Deputy Jones then asked if he had any weapons. Mr. Cook responded he had a pocket-knife. Deputy Jones ordered him to place the pocket-knife on the hood of the car and Cook complied. Deputy Jones then instructed Mr. Cook to get back into the vehicle. Again, Cook complied and got back in the vehicle.

16.   As Deputy Jones talked to Mrs. Cook on the driver side of the vehicle, Mr. Cook was seated in the front passenger seat with his right hand in his pocket. Deputy Jones then came around to the passenger side, opened the door, and dragged/pulled Mr. Cook from the vehicle. Mr. Cook's right hand was still in his pocket as he was pulled from the vehicle. Immediately upon pulling Mr. Cook from the vehicle, Deputy Jones slammed him to the ground face down, fracturing Mr. Cook's nose then got on top of Mr. Cook who lay face down, placing his knee in Mr. Cook's back, pinning Cook, face down, to the ground. Deputy Jones then managed to handcuff Cook's left hand and ordered Cook to take his right hand out of his pocket so he could handcuff that too. But Mr. Cook could not comply because his arm was pinned under his body with Deputy Jones on top of him. Mrs. Cook yelled to Deputy Jones that her husband could not comply because his arm was pinned.

17.   Deputy Jones began to taser/shock/electrocute Mr. Cook who was screaming at this point. Mr. Cook then somehow managed to get his right hand out of his pocket, then grabbed onto the floorboard of his vehicle with his outstretched right hand as Deputy Jones continued to taser him. Mr. Cook screamed to his wife to "Go get the neighbors!" Deputy Jones said, "Yeah, go get the fucking neighbors!" Leaving her family, Mrs. Cook ran to get her neighbor Anthony Reeves, who also happens to work for Sheriff Perkins as a jailer at the Lamar County Jail. Deputy Jones continued to taser/shock/electrocute him approximately fourteen (14) times over a period of about seven (7) minutes until his wife returned. Mr. Cook did not offer resistance except to scream and thrash about in pain and panic, slipping in and out of consciousness. Mr. Cook states that he does not know why Deputy Jones did not handcuff his right hand; that Deputy Jones could have easily done so at any point. Mr. Cook did not resist. Deputy Jones called for backup.

18.   Sulligent Police Officers Michael Bankhead and Traci Taylor arrived about the same time that Mrs. Cook returned with Lamar County Sheriff's Deputy Anthony Reeves, who is her neighbor. After Deputy Jones handcuffed Mr. Cook, then Kalum Cook, Mrs. Cook, Anthony Reeves, Officer Taylor, and the two other individuals witnessed Officer Bankhead strike Mr. Cook in the back of his head, six (6) or seven (7) times, using his own set of handcuffs as brass knuckles. Mr. Cook recalls that he "saw stars" when he was struck repeatedly in the back of the head. Officer Bankhead also struck Mr. Cook in upper left arm three (3) to four (4) times with a heavy flashlight, causing significant bruising. Mrs. Cook recalls Officer Taylor to say "Come on guys, don't you think he's had enough?"

19.  After Mr. Cook was searched and taken off to jail, Jones, Bankhead, and another individual searched the vehicle. Mrs. Cook was required to remain standing for the next hour and a half, outside, in the family's front yard, in the freezing rain, with her three year old son Griffin in her arms, and her eight year old son Kalum at her side, without protective clothing. Deputy Jones and Officer Bankhead who remained at the scene denied Mrs. Cook's repeated pleas to allow her and the boys to a) take shelter inside their home, or b) take shelter inside any of the vehicles at the scene, or c) to allow Mrs. Cook to call her mother to retrieve the boys. As a result, the boys subsequently developed bronchitis, and Kalum was emotionally injured.

20.  Mr. Cook was then taken to jail and booked for, among other things, resisting arrest.

21.  Deputy Jones should have, but did not forthwith release Jennifer Cook for her traffic violation. By about 10:00 p.m. that evening, Mrs. Cook and the boys had been allowed to get out of the cold. She had already pulled the vehicle up to the house, put the boys inside, put her coat on and was speaking to Anthony Reeves who had remained to see them safely inside. Deputy Jones went back to the scene after having left, in order to return Jennifer Cook's driver license and issued her a citation for bad tail lights.

22.  Mark Collier, a family friend and former jailer had gone to the jail earlier, when Mr. Cook was taken. That evening Mr. Collier telephoned Mrs. Cook telling her that later that evening, at the jail, Deputy Jones had confessed to him and to Anthony Reeves that Mr. Cook "didn't really resist arrest." Anthony Reeves made a similar phone call to her the next day.

23.  As a direct and/or proximate result of Defendants' actions, plaintiff, Jason Cook suffered psychological damage, severe emotional distress, mental distress, humiliation, inconvenience, and severe physical injuries. These injuries were long lasting, and he continues to experience pain and suffering as a result thereof. More specifically, Jason Cook suffered severe pain, elevated blood pressure, a contused right eye, a large lip laceration, two fractures of his nose, a deviated septum which interferes with his breathing causing sleep apnea, abrasions to the left inner and left upper arm, left knee, large area to left back and large area of contusion to the left upper back, as well as bruising and abrasions to the right upper arm and back. There was also a very large area of bruising to Jason Cook's left arm extending above and below his elbow and a possible fracture of his ulna bone. There are multiple abrasions from the taser burns to Jason Cook's left upper and mid back, left

arm and elbow region, left upper arm, left lower side near the rib cage and right upper shoulder blade region. Jason Cook also suffered post traumatic stress disorder and possible heart damage. Mr. Cook now suffers chronic heart arrhythmia and has had at least one seizure since the attack.  Mr. Cook had never suffered these maladies before the attack. Mr. Cook was jailed and was not taken for medical treatment for approximately three (3) days. At no time did Mr. Cook incite or resist law enforcement officers.

24. As a direct and/or proximate result of Defendants' actions, plaintiff, Jennifer Cook suffered psychological damage, severe emotional distress, mental distress, humiliation, and inconvenience. She is seeing a therapist as a result of this attack. At no time did Mrs. Cook incite or resist law enforcement officers.

25.  Mr. and Mrs. Cook's minor son, Kalum Cook, who was eight (8) years old when this happened, witnessed the entire attack. He never left his father's side and saw everything. As a direct and/or proximate result of Defendants' actions, Kalum suffered psychological damage, severe emotional distress, mental distress, humiliation, inconvenience, and physical illness. He caught a case of bronchitis as a result of standing out in the freezing rain next to his mother. He has had trouble sleeping, is frightened by law enforcement, and is seeing a therapist.

26.  As a direct and/or proximate result of Defendants' actions, Mr. and Mrs. Cook's other minor son, Griffin Cook, who was three (3) years old when this happened, suffered physical illness. He caught a case of bronchitis as a result of staying out in the freezing rain in his mother's arms. He does not appear to be emotionally or psychologically damaged.

(Doc. 31 ¶¶ 14-26.)

Plaintiffs' Second Amended Complaint contains the following Counts:

(1) Unlawful Seizure (§ 1983) against all defendants; (2) Unlawful Entry and Search

(§ 1983) against all defendants; (3) Excessive Use of Force (§ 1983) against all

defendants; (4) Unlawful Entry and Search / False Arrest / False Imprisonment (state

law) against Jones and Bankhead; (5) Assault and Battery (state law) against Jones and Bankhead; (6) Negligence (state law) against Jones and Bankhead.  (Doc. 31.)

### III.  DISCUSSION

#### A.  DEFENDANTS PERKINS AND STANFORD

In their Response to the Motions to Dismiss, (doc. 47), plaintiffs "concur that Motions to Dismiss be granted on all counts for Lamar County Sheriff Terry Perkins and City of Sulligent Alabama Police Chief Willis Stanford."  (Doc. 47 ¶ 1.)  Accordingly, the Motions to Dismiss filed by defendant Perkins and defendant Stanford, (docs. 32 & 39), will be granted.

#### B.  DEFENDANTS BANKHEAD AND JONES

##### 1.  Federal Claims

The Eleventh Circuit has held:

> Title 42 U.S.C. § 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions. 42 U.S.C. § 1983.  Section 1983 is merely a vehicle by which to bring these suits; it does not create any substantive federal rights.  Therefore, the plaintiff must point to a specific federal right that the defendant violated.

*Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1299 (11th Cir. 2007)(citing *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996)).

Plaintiffs allege that Jones and Bankhead (a) seized plaintiffs without probable cause in violation of the Fourth and Fourteenth Amendments; (b) searched the person of Jason

Cook and the vehicle of Jason and Jennifer Cook without a warrant or probable cause in violation of the Fourth and Fourteenth Amendments, and (c) used excessive force on Jason Cook in violation of the Fourth and Fourteenth Amendments.  (Doc. 31 ¶¶ 29, 34, 38.)

### a. Section 1983 Claims Under the Fourteenth Amendment to the United States Constitution

### I.    Jason Cook

The court first notes that Jason Cook's claims under the Fourteenth Amendment are due to be dismissed.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing those claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Jason Cook's claims of unlawful seizure and unlawful search fall squarely within the Fourth Amendment's prohibitions against unreasonable searches and seizures.  *See, e.g.*, *U.S. v. Davis*, 598 F.3d 1259, 1263 (11th Cir. 2010) (holding that search of vehicle during traffic stop violated passenger's Fourth Amendment rights); *Wood v. Kesler*, 323 F.3d 872, 880-81 (11th Cir. 2003) (analyzing § 1983 plaintiff's false arrest claim under Fourth Amendment). Therefore, the Fourth Amendment, rather than the Fourteenth Amendment, is the proper constitutional framework to be applied for those claims.

Whether the Fourth or Fourteenth Amendment applies to claims of excessive force by government officials depends on the plaintiff's status at the time the official applied the

force.  The Supreme Court has held that "claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [plaintiff's] person" are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989)("[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . .  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.")(footnotes omitted).  While the Fourth Amendment prohibits the use of excessive force against arrestees, the Fourteenth Amendment prohibits the use of such force against pretrial detainees. *See, e.g.*, *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 n. 4 (11th Cir. 2009) (excessive force claim arising out of struggle between plaintiff and sheriff's deputy in pat-down room at jail properly analyzed under Fourteenth, not Fourth, Amendment).

Plaintiffs argue that the Fourteenth Amendment properly applies because "[t]he Eleventh Circuit has stated repeatedly that 'the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit.'" (Doc. 48 at 8 [citing *Hicks v. Moore*, 422 F.3d 1246, 1253 n. 7 (11th Cir. 2005)].)  Plaintiffs argue that "[t]he facts  as alleged by Plaintiffs set forth a scenario in which Plaintiff Jason Cook may

10

reasonably be considered to be a pre-trial detainee at various points in time while his Fourteenth Amendment rights were being violated." (Doc. 48 at 8.)  However, because the last allegation of force contained in the Second Amended Complaint occurred at the scene of the arrest, the court finds that "the facts here fall on the arrest end" of the spectrum between arrest and pretrial detainment.  *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (per curiam) (holding that use of force against § 1983 plaintiff that occurred at end of high speed police chase was properly analyzed under Fourth Amendment, not Fourteenth, because the facts fell "on the arrest end" of the spectrum); *see also Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (stating Fourteenth Amendment analysis does not begin until "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time") (quotation and alteration omitted) (cited in *Garrett*, 378 F.3d at 1279 n.11); *Brothers v. Klevenhagen*, 28 F.3d 452 (5th Cir. 1994) (plaintiff was pretrial detainee protected by Fourteenth Amendment where he had been arrested, processed by the police department, and spent several hours in jail before the police allegedly used excessive force on him).  Because Jason Cook's claims of excessive force arise out of his arrest, rather than his post-custody treatment, they are properly analyzed under the Fourth Amendment.  Therefore, Jason Cook's claims of excessive force, unlawful seizure, and unlawful search against Jones and Bankhead based on the Fourteenth Amendment are due to be dismissed.

11

### ii.      Jennifer, Kalum, and Griffin Cook

Jennifer, Griffin, and Kalum Cook's claims of unlawful seizure under the Fourteenth Amendment are also due to be dismissed.  Plaintiffs claim that defendants illegally seized Griffin and Kalum Cook, the minor children, by requiring them to remain standing for an hour and a half in the "freezing rain" while the Cook's car was searched despite "Mrs. Cook's repeated pleas to allow her and the boys to a) take shelter inside their home, or b) take shelter inside any of the vehicles at the scene, or c) to allow Mrs. Cook to call her mother to retrieve the boys." (Doc. 31 ¶ 19.)  Plaintiffs claim that, under *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979), defendants Bankhead and Jones violated the Fourteenth Amendment substantive due process rights of plaintiffs Griffin and Kalum Cook.  (Doc. 48 pp. 10-11.)  Plaintiffs allege that Griffin and Kalum developed bronchitis from standing in the rain and that Kalum was "emotionally injured."  (Doc. 31 ¶ 19.)

The court finds *White v. Rochford* to be distinguishable from the facts at hand.  In *White*, the Seventh Circuit held that allegations that defendant police officers left children on the side of a major highway while they effectuated an arrest of the children's uncle stated a claim under § 1983 for a violation of the children's substantive due process rights.  592 F.2d at 384.  The children were forced to walk across eight lanes of highway traffic and wander on the freeway at night in search of a telephone in order to contact their mother.  *Id.* at 382.  The court stated that the defendants' actions violated the Due Process Clause's protections against "undue incursions on personal security" as well as "state activities which are fundamentally offensive to a 'sense of justice' or which 'shock the conscience.'"  *Id.* at

12

383 (citing *Rochin v. California*, 342 U.S. 165, 172, 173 (1952)).  The court emphasized that the defendants' actions in abandoning the children and "depriving [them] of adult care" also interfered with the Due Process Clause's protections of the parent-child relationship.  *Id.* at 383 n.1.

The court first notes that although the children in the case at bar were not arrested and plaintiffs do not allege that defendants Bankhead or Jones interacted with the children in any way, the defendants' actions in restraining the children from being free to leave the scene amounted to a restraint of the children's liberty interests such that a duty arose to protect their liberty interests.  *See DeShaney v. Winnebago County Social Servs. Dept.*, 489 U.S. 189, 200 (1989) (the state has an affirmative duty to protect an individual's liberty interests whenever it restrains the individual's ability to act on his own behalf); *Matheny v. Boatright*, 970 F. Supp. 1039, 1043 (S.D. Ga. 1997) (police officers who transported children with their arrested mother to the detention facility restrained the children's ability to leave such that they owed the children a duty to protect their liberty interests).

However, the court finds that defendants' actions did not amount to a breach of the duty owed to the minor children.  While Griffin and Kalum were forced to remain outside in the rain during the course of the arrest and search, they were with their mother the whole time, (doc. 31 ¶ 19), except when Mrs. Cook left to "get the neighbors" (*id.* ¶ 17).  It is unclear whether the children had been instructed to get out of the vehicle before Mrs. Cook returned, as the Second Amended Complaint states that Mrs. Cook returned, and subsequently Mr. Cook was searched, and then Mrs. Cook was required to stand outside with

13

her children while the car was searched.  (*Id.* ¶¶ 17-19.)  In any case, the defendants' actions

did not constitute an unjustified intrusion on the children's personal security or "shock the

conscience." Accordingly, the defendants' actions did not violate the due process rights of

Griffin and Kalum Cook under the standard enunciated in *White*.  *See Matheny*, 970 F. Supp.

at 1044 (police officers who detained children for an hour and a half while effectuating arrest

on mother, but did not physically harm the children, did not violate the substantive due

process or Fourth Amendment rights of the minor children).  While the court does not

condone leaving children standing in freezing rain while an arrest and search are conducted,

the actions did not amount to a constitutional violation.  *See Courson v. McMillian*, 939 F.2d

1479, 1498 (11th Cir. 1991) ("While we are appalled by the conduct of the defendants in this

case, we note the danger of confusing the question of whether the plaintiff has state tort

remedies with whether the plaintiff has stated a claim amounting to the deprivation of a

constitutional right." (quoting *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1521

(10th Cir. 1991))).

Finally, to the extent Jennifer Cook alleges a violation of the Fourteenth

Amendment's substantive due process protections on her own behalf, the court finds that

such claim is due to be dismissed.  The Second Amended Complaint does not allege that

Jennifer was threatened or physically harmed by the defendants.  While Jennifer Cook

alleges that she suffered "psychological damage, severe emotional distress, mental distress,

humiliation, and inconvenience" as a result of defendants' actions, such emotional injury

suffered as a result of witnessing officers' actions directed at another are not actionable

14

under § 1983.  *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (plaintiff who was free to leave the vicinity of arrest of his father did not have a liberty interest under the Fourteenth Amendment to be free of emotional trauma suffered as a result of observing police force directed entirely at his father).  Although Jennifer was not free to leave the scene of the arrest while the car was being searched, (doc. 31 ¶ 19), this detention does not transform her Fourth Amendment claim into a Fourteenth Amendment claim.  *See Maryland v. Wilson*, 519 U.S. 408 (1997) (analyzing officer's detention of passengers of car during traffic stop under the Fourth Amendment).  Moreover, while Jennifer was issued a citation for bad tail lights, (doc. 31 ¶ 21), she cannot be considered a pretrial detainee because the complained of detention occurred prior to her receiving the tail light citation, rather than after.  *See Gutierrez*, 139 F.3d at 452 (Fourteenth Amendment analysis does not begin until after the incidents of arrest are completed).  Therefore, any harms suffered by Jennifer occurred on the "arrest end" of the arrest-pretrial detention spectrum.  *Garrett*, 378 F.3d at 1279 n.11.

For these reasons, all claims under the Fourteenth Amendment are due to be dismissed.

### b. Section 1983 Claims Under the Fourth Amendment to the United States Constitution

Defendants Jones and Bankhead contend that the § 1983 claims against them in their individual capacities are due to be dismissed on the basis of qualified immunity.[2]

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id.* They are "immune" from suit. *Id.* We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id.*

*Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002))(internal citations and quotations omitted).

The Eleventh Circuit uses a two-step analysis to determine whether a public official is entitled to qualified immunity: (1) the public official must establish that he was acting within the scope of his discretion; and (2) if the public official establishes that he was acting within his discretion, the plaintiff must show that the public official violated clearly

---

[2] The Second Amended Complaint does not allege claims against defendants Jones and Bankhead in their official capacities.

established statutory or constitutional law.  *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992).

Whether defendants' actions violated clearly established constitutional law also "consists of a two-part inquiry." *Harris v. Coweta County, Ga.*, 433 F.3d 807, 812 (11th Cir. 2005)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> First we ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" [*Saucier*, 533 U.S. at 201] If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete. However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004)(citing *Saucier*, 533 U.S. at 201-02).

*Id.*  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736.[3]  In a civil action brought pursuant to § 1983, the plaintiff bears the burden of demonstrating a constitutional violation. *Harris*, 433 F.3d at 811(citing *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)); *Kesler*, 323 F.3d at 877-78.

---

[3]  The Supreme Court has recently limited *Saucier*'s mandate that a district court ***must*** decide the question of qualified immunity by deciding first if there has been a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")

"To survive a motion to dismiss [based on qualified immunity], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  [In such a case,] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010)(quoting *Iqbal*, 129 S. Ct. at 1948-49 (quoting *Twombly*, 550 U.S. at 570))(internal quotations and citations omitted).

Officer Bankhead and Deputy Jones were clearly acting within their discretionary authority on the night of November 29, 2008 in stopping the Cooks' vehicle and arresting Jason Cook.  *See Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (officer who arrested plaintiff for traffic violation was "no doubt" acting within his discretionary capacity when he arrested plaintiff).  Therefore, the court will analyze whether the defendants are entitled to qualified immunity for each constitutional violation alleged by first determining whether the defendants' actions violated the Constitution, and, if so, determining next whether a reasonable officer would have known that his actions violated clearly established federal law. *Harris*, 433 F.3d at 812.

I) Unlawful Seizure

Plaintiffs claim that defendants Jones and Bankhead "seized plaintiffs without probable cause," and, "[d]espite the knowledge of lack of probable cause and the opportunity to protect the Plaintiffs, they failed or refused to take any action to protect the Plaintiffs." (Doc. 31 ¶¶ 29-30.)  In their Motions to Dismiss, defendant Jones and Bankhead assert that

18

probable cause existed to seize the plaintiffs, entitling them to qualified immunity.  (Doc. 36 at 14-19; Doc. 35 at 12-16.)

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Coffin v. Brandau*, 642 F.3d 999, 1009 (11th Cir. 2011) (quoting U.S. Const. amend. IV).  "A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)) (internal quotations omitted).  A traffic stop, and a temporary detention of individuals as a result of the stop, is a "seizure" within the Fourth Amendment.  *United States v. Allen*, 274 Fed. Appx. 811, 817 (11th Cir. 2008) (citing *Whren v. U.S.*, 517 U.S. 806, 809 (1996)).  "[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Lee*, 284 F.3d at 1194-95; *see also Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense").  Arguable

19

probable cause, rather than probable cause in fact, is "all that is required for qualified immunity to be applicable to an arresting officer." *Lee*, 284 F.3d at 1195 (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)).  Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.  *Id.*

Plaintiffs allege that defendant Jones stopped the Cooks for a bad headlight as they were pulling into their driveway at their home in Lamar County, Alabama.  (Doc. 31 ¶¶ 1, 14.)  Alabama law requires automobiles to have two working headlights, and, therefore, defendant Jones had probable cause to stop the Cooks.  *See* Ala. Code 1975 § 32-5-240. The statute only imposes this requirement for "[e]very vehicle upon a highway within this state." *Id.* § 32-5-240(a)(1).  Although defendant Bankhead asserts that "Jennifer and Jason Cook were on a public highway immediately before pulling into the Cook's driveway," (doc. 35 at 14), the Complaint does not mention that the Cooks had been driving on a highway. However, "'[a]rguable probable cause does not require an arresting officer to prove every element of a crime or to  obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.'" *Lee*, 284 F.3d at 1195 (quoting *Scarbrough*, 245 F.3d at 1302-03).  Therefore, defendant Jones had at least arguable probable cause to stop the Cooks' vehicle.  *See Strickland v. City of Dothan, Ala.*, 399 F. Supp. 2d 1275, 1286 (M.D. Ala. 2005) (where § 1983 plaintiff admitted to driving without headlights at the time of traffic stop, probable cause existed for his initial traffic stop).  Further, it was lawful for Deputy Jones to have Jennifer Cook, the driver of the

vehicle, exit the car.[4]  *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.").

Detention of occupants of a motor vehicle for a routine traffic stop "must 'last no longer than is necessary to effectuate the purpose of the stop,' and '[t]he scope of the detention must be carefully tailored to its underlying justification.'" *United States v. Pruitt*, 174 F.3d 1215, 1220 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "[O]nce an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (*i.e.,* a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Pruitt*, 174 F.3d at 1219 (citations and quotations omitted).  "The officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." *Id.* at 1220 (citations omitted).

According to the Complaint, after Jones stopped the vehicle, Deputy Jones smelled alcohol in the car and Jason Cook admitted to having an open container of alcohol in the

_____

[4]  The Complaint does not allege whether Jennifer Cook was ordered to exit the vehicle. She was, however, required to remain standing outside the vehicle while the vehicle was searched. (Doc. 31 ¶ 19.)

vehicle.  (Doc. 31 ¶¶ 14-15.)  Lamar County, Alabama is a dry county, (*see* doc. 36-1), and,

therefore, the Cooks' possession of alcohol was a misdemeanor offense under Alabama Law.

Ala. Code 1975 §§ 28-4-2; 28-4-20, 28-4-21.  Possession of an open container of alcohol in

a motor vehicle on a public highway or a right-of-way to a public highway is also a

misdemeanor under Alabama law. *See id.* § 32-5A-330.  Further, the smell of alcohol could

have given Deputy Jones reasonable suspicion that Jennifer Cook was driving while

intoxicated.  *See Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (officer's smell of

alcohol in plaintiff's car gave officer reasonable suspicion that driver was driving under the

influence of alcohol). Jason Cook's admission to having an open container of alcohol in the

vehicle and Deputy Jones's smelling alcohol when he stopped the vehicle presented

reasonable suspicion that illegal activity had occurred, justifying the continued detention of

the Cooks and Jason Cook's arrest for illegal possession of alcohol.[5]  Moreover, even though

these offenses are misdemeanors, "[w]hen an officer lawfully arrests an individual for the

commission of a crime, no matter how minor the offense, the officer is entitled under

Supreme Court precedent to effectuate a full custodial arrest" without violating the arrestee's

---

[5]  Plaintiffs state that Jason Cook was arrested "for, among other things, resisting arrest."
(Doc. 31 ¶ 20.)  In support of his Motion to Dismiss, defendant Bankhead has produced a Case
Action Summary Sheet for Lamar County District Court, showing plaintiff Cook was charged
with illegal possession of alcohol on December 1, 2008, (doc. 35-2 at 2).  Defendant Bankhead
has also produced a list of wet and dry counties in Alabama from Alabama's Alcoholic Beverage
Control Board's website in which Lamar County is listed as a dry county.  (Doc. 35-1.)  Although
evidence outside of the pleadings is not normally included in the determination of a Motion to
Dismiss, plaintiffs have not objected to the inclusion of this evidence.

Fourth Amendment rights.  *Lee*, 284 F.3d at 1196 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

Plaintiffs Jennifer, Kalum, and Griffin Cook challenge their detention for the remainder of the traffic stop while the vehicle was searched, arguing that they should have been allowed to leave the scene to get out of the rain.  (Doc. 48 at 1.)  "When a vehicle is pulled over for investigation of a traffic violation, a police officer effectively seizes 'everyone in the vehicle.'"  *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)).  "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave."  *Id.* at 788.  "[A]n officer making a traffic stop may order the passengers to get out of the car pending completion of the stop." *U.S. v. Clark*, 337 F.3d 1282, 1285 (11th Cir. 2003) (quoting *Maryland v. Wilson*, 519 U.S. 408, 410 (1997)).  Accordingly, it was reasonable for the officers to have Jennifer and her children stand outside the car while they searched it.  Moreover, it was reasonable for the officers to deny Jennifer's requests to allow Jennifer and her children to take shelter in their home or inside the vehicles at the scene, as the officers were allowed to keep them at the scene to prevent them from retrieving a weapon from inside the home or otherwise.

Plaintiffs assert that "[w]hen Mrs. Cook [] returned to the scene [after leaving to get the neighbors,] a new set of facts was needed for the officers to establish probable cause to detain her."  (Doc. 48 at 1.)  Plaintiffs contend, "There was no probable cause to detain her

again in the freezing rain once she had been allowed to go by Deputy Jones." (*Id.*) Plaintiffs appear to assert that, when Jennifer Cook left to get the neighbors after Deputy Jones said, "Yeah, go get the fucking neighbors!", she was fully released from the scene and could not be detained again without a new basis for probable cause. Accepting as true plaintiffs' allegation that Jennifer Cook was fully released from the scene at that time, the court agrees that Jennifer's subsequent detention was without justification under the Fourth Amendment, and a  reasonable officer would have known that his actions violated clearly established federal law. Therefore, defendants Bankhead and Jones are not entitled to qualified immunity as to plaintiff Jason Cook's claim of unlawful seizure under the Fourth Amendment.

For these reasons, Jason, Kalum, and Griffin Cook's claims of Unlawful Seizure under the Fourth Amendment are due to be dismissed. Jennifer Cook's claim of unlawful seizure is not due to be dismissed.

### ii) Unlawful Entry and Search

Plaintiffs claim that defendants Jones and Bankhead "searched the person of Defendant Jason Cook and the vehicle of Jason and Jennifer Cook, without warrant or probable cause." (Doc. 31 ¶ 34.) The Second Amended Complaint states that Jason Cook was searched after Deputy Jones handcuffed him. (*Id.* ¶ 19.) The facts are unclear whether Jones and Bankhead or only Jones searched Jason Cook's person. (*Id.*; *id.* ¶ 34.) After Jason Cook was searched and taken to jail, Jones, Bankhead, and another individual searched the Cooks' vehicle. (*Id.* ¶ 19.)

24

A warrantless search is *per se* unreasonable under the Fourth Amendment unless it falls within one of several specifically established exceptions. *Holmes v. Kucynda*, 321 F.3d 1069, 1082 (11th Cir. 2003).   A search incident to arrest is one of these exceptions.   *Id.* "'When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.  Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.'" *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).  The permissible search includes the arrestee's person and the area within his immediate control, meaning "the area from within which he might gain possession of a weapon or destructible evidence."  *Chimel*, 395 U.S. at 763.

Plaintiffs admit that Jason Cook had produced one weapon, a pocketknife, when their car was stopped by defendant Jones, and plaintiffs also admit that Jason Cook had destroyed evidence in so far as they admit that he poured out a beer can that had been in his car and threw it in the back of his vehicle.  (Doc. 31 ¶ 15.)  Further, as previously discussed, Jason Cook's arrest was lawful since probable cause existed to find that a violation of Alabama's liquor laws had occurred.   Accordingly, under *Chimel*, the search of Jason Cook's person did not violate his Fourth Amendment rights.

The parties dispute the proper precedent to apply to determine the constitutionality of defendants' search of the Cook's vehicle.  At the time of Jason Cook's arrest, *New York v. Belton* governed the constitutionality of vehicle searches incident to the arrest of an occupant of the vehicle.  453 U.S. 454 (1981).  *Belton* held that a policeman who has made

a lawful custodial arrest of the occupants of a vehicle may, "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*  About five months after Cook's arrest, the Supreme Court decided *Arizona v. Gant*, which limited *Belton*, holding that a vehicle search is unreasonable where police could not reasonably believe either that the arrestee could have accessed his car at the time of the search or that evidence of the offense for which he was arrested could have been found therein.  129 S. Ct. 1710, 1719 (2009).  The Court held that the search of the car of the arrestee, who had been arrested for driving with a suspended license and who had been handcuffed and secured in a patrol car when the search took place, was unreasonable under this rule, as neither exception for allowing the search applied.  *Id.*  Plaintiffs claim that *Gant*, not *Belton*, is applicable to this case.  (Doc. 48 at 9.)

The qualified immunity analysis asks whether the defendants' actions violated "clearly established" statutory or constitutional law.  *Saucier*, 533 U.S. at 201.  At the time of the acts at issue, the Eleventh Circuit adhered to a broad reading of *Belton*, holding that police could search a vehicle incident to arrest regardless of the occupant's actual control over the passenger compartment at the time of the search.  *U.S. v. Davis*, 598 F.3d 1259, 1262, 1265 (11th Cir. 2010) (discussing *Belton* and *Gant* in analysis of exclusionary rule's application to search of vehicle).  Therefore, the narrower vehicle search rule of *Gant* was far from  clearly established.

"[A] search performed in accordance with  [the Eleventh Circuit's] erroneous interpretation of Fourth Amendment law is not culpable police conduct."  *Id.* at 1265.  As

26

the Eleventh Circuit stated in *Davis*, "Law enforcement officers in this circuit are entitled to rely on our decisions, and '[p]enalizing the officer for the [court's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.'" *Id.* at 1266 (quoting *U.S. v. Leon*, 468 U.S. 897, 921 (1984)).  Because the defendants lawfully arrested Jason Cook, as previously discussed, and the law of the Circuit at the time permitted a contemporaneous search of a vehicle incident to arrest of a passenger, defendant Jones and Bankhead are entitled to qualified immunity on the alleged unreasonable search of the Cooks' vehicle.  *See Jack v. Hansell*, 2010 WL 3517040, at *6 (M.D. Fla. Sept. 7, 2010) (holding that, while police officer's search of plaintiff's vehicle in 2007 violated plaintiff's Fourth Amendment rights when analyzed under *Gant*, officer was entitled to qualified immunity "as these constitutional protections were not clearly established at the time of the officer's conduct").

For these reasons, defendants Jones and Bankhead are entitled to qualified immunity as to plaintiffs' claims under Count II, Unlawful Entry and Search, and these claims will be dismissed.

### iii) Excessive Use of Force

In Count 3, plaintiffs claim that Jones and Bankhead "assaulted and battered Plaintiff, Jason Cook, or failed to intervene to protect him from the unlawful actions of others despite the opportunity to do so."  (Doc. 31 ¶ 38.)

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal

apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)(citing *Graham*, 490

U.S. at 394).  Importantly, not all force used in the course of an arrest is unconstitutional,

and "the application of de minimis force, without more, will not support a claim for

excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253,

1257-58 (11th Cir. 2000).  In determining whether an officer's use of force is excessive,

"[t]he question is whether the officer's conduct is objectively reasonable in light of the facts

confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citing

*Graham*, 490 U.S. at 394)).   The reasonableness of the use of force is measured objectively

and it is "judged from the perspective of a reasonable officer on the scene, rather than with

the 20/20 vision of hindsight." *Graham,* 490 U.S. at 397; *Penley v. Eslinger*, 605 F.3d 843,

852 (11th Cir. 2010); *Crenshaw v. Lister*, 556 F.3d 1286, 1290 (11th Cir. 2009).

Examination of the objective reasonableness allows for consideration of the circumstances

in light of the fact that "police officers are often forced to make split-second judgments – in

circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that

is necessary in a particular situation." *Oliver*, 586 F.3d at 905-06 (citing *Graham*, 490 U.S.

at 396-97).

> Because the test of reasonableness under the Fourth Amendment is not capable
> of precise definition or mechanical application, however, its proper application
> requires careful attention to the facts and circumstances of each particular
> case, including [1] the severity of the crime at issue, [2] whether the suspect
> poses an immediate threat to the safety of the officers or others, and [3]
> whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)(quoting *United States v. Place*, 462 U.S. 696, 703 (1983))(internal citations and quotations omitted). "As [the Eleventh Circuit] has clarified, the second factor [– whether the suspect poses an immediate threat to the safety of the officers or others –] can be reduced to a single question: whether, given the circumstances, [the suspect] would have appeared to reasonable police officers to have been gravely dangerous." *Penley*, 605 F.3d at 851 (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002)).

Plaintiffs allege that Deputy Jones "dragged/pulled Mr. Cook from the vehicle," "slammed him to the ground face down, fracturing Mr. Cook's nose[,] then got on top of Mr. Cook who lay face down, placing his knee in Mr. Cook's back, pinning Cook, face down, to the ground." (Doc. 31 ¶ 16.) Deputy Jones then "began to taser/shock/electrocute Mr. Cook who was screaming at this point," and continued to taser Cook approximately fourteen times over a period of seven minutes. (*Id.* ¶ 17.) Plaintiffs allege that Cook did not resist Jones's actions "except to scream and thrash about in pain and panic, slipping in an out of consciousness." (*Id.*)

As for defendant Bankhead, plaintiffs allege that after Deputy Jones handcuffed Jason Cook, Officer Bankhead "[struck] Mr. Cook in the back of his head, six (6) or seven (7) times, using his own set of handcuffs as brass knuckles," causing Cook to "[see] stars," and Bankhead also "struck Mr. Cook in [his] upper left arm three (3) to four (4) times with a heavy flashlight, causing significant bruising." (Doc. 31 ¶ 18.) As a result of Jones's and

Bankhead's actions,[6] Cook suffered psychological distress and physical injuries including "severe pain, elevated blood pressure, a contused right eye, a large lip laceration, two fractures of his nose, a deviated septum," bruising and abrasions to his arm, knee and back, and suffers chronic heart arrhythmia.  (*Id.* ¶ 23.)

Defendants Jones and Bankhead first argue that plaintiff Jason Cook's excessive force claim is subsumed within his illegal seizure/unlawful arrest claim, and is not a discrete claim of excessive force.  (Doc. 36 at 21; Doc. 35 at 8-10.)  In support of this argument, defendants cite *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000), and *Williams v. United States*, 2010 WL 1408398 (M.D. Fla. Apr. 2, 2010).  In *Jackson*, the Eleventh Circuit addressed the plaintiffs' excessive force claim arising out of an alleged unlawful traffic stop, stating,

> Plaintiffs assert that because there was no basis for the stop and no governmental interest at stake, *any* use of force, however minimal, was more than reasonably necessary and excessive. Under this Circuit's law, however, a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.

206 F.3d at 1170-71.  *Williams* likewise rejected a plaintiff's excessive force claim where it amounted to a claim that the defendants used excessive force due to the fact that they allegedly lacked the right to make the arrest itself.  2010 WL 1408398, at *6 (quoting *Bashir v. Rockdale County*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) ("[W]here an excessive force claim is predicated solely on allegations [that] the arresting officer lacked the power to make

---

[6]  The Second Amended Complaint does not specify which injuries are alleged to have been the result of Jones's actions and which are alleged to have been the result of Bankhead's actions.

an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim.")).

While plaintiffs do allege that they were unlawfully seized, the court does not read the excessive force claim as being predicated solely on the fact that the arrest and seizure of the plaintiffs was allegedly unlawful.  Rather, plaintiffs argue that the force was excessive in light of the fact that Jason Cook was arrested on a minor charge, was cooperative and respectful to the officers, and never attempted to escape.  (Doc. 48 at 6.)  Plaintiffs also argue that Officer Bankhead's use of force was excessive due to the fact that Jason Cook was already handcuffed when Bankhead used force against him.  (Doc. 49 at 7.)  Plaintiffs do not argue that any force used in the arrest was excessive because the officer lacked the power to make the arrest itself; they argue that the force was unreasonable in light of the circumstances of the arrest and Jason Cook's actions.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) ("A genuine 'excessive force' claim relates to the manner in which an arrest is carried out, independent of whether law enforcement had the power to arrest.").  Further, because the court has found that there was probable cause for Jason Cook's arrest, the court will separately analyze whether the force used was excessive. Accordingly, the court rejects defendants' arguments that Jason Cook's excessive force claim is subsumed within his unlawful arrest claim.

First, following 11th Circuit precedent, the court finds that the force used by defendant Jones in pulling Jason Cook from the car, slamming him to the ground, and pinning Jason to the ground face down with his knee was not excessive.  Similar uses of

force in the course of effectuating arrests have been held to constitute only de minimis force. *See Woodruff v. City of Trussville*, 2011WL 2847585, at *2 (11th Cir. July 18, 2011) (per curiam) (police officer's punching plaintiff in the face, forcefully removing him from his car, and slamming him to the ground "constituted only de minimis force"); *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) (only de minimis force was used when officer grabbed the plaintiff, shoved him against a vehicle, pushed his knee into plaintiff's back, searched plaintiff's groin in an uncomfortable manner, and placed plaintiff in handcuffs, all resulting in only minor bruising). "De minimis force will only support a Fourth Amendment excessive force claim when an arresting officer does not have the right to make an arrest." *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008). Because the court has concluded that there was probable cause to arrest Jason Cook, de minimis force cannot be the basis of an excessive force claim. *See id.*

However, accepting as true plaintiff's allegations, a reasonable jury could find that defendant Jones's repeated use of a taser gun on Jason Cook did amount to excessive force. Defendant Jones argues that, under *Graham v. Connor*, the force used on Jason Cook was not excessive because "[t]he crimes involved in this case were severe, consisting of a felony and several misdemeanors," Jason Cook had not given Jones his right hand as instructed, Deputy Jones was outnumbered by the plaintiffs, and Jones had not patted down Cook for additional weapons. (Doc. 35 at 23-26.)   At the time that defendant Jones used the taser gun, Jason Cook was not secured in handcuffs, but plaintiffs allege that Jason was not resisting when instructed by Jones to stay in the vehicle and place his pocket knife on the

32

hood of the car.   Cook had been cooperative.  (Doc. 31 ¶ 15.)  Once on the ground, Jason

Cook did not resist Jones's use of force, and claims that he at first was unable to remove his

right hand from his pocket because his arm was pinned under his body with Jones on top of

him.  (*Id.* ¶ 16.)  When Jason finally did get his right hand out, Jones continued to taser him

for seven minutes, rather than handcuff him, even though both hands were free.  (*Id.* ¶ 17.)

Further, the presence of Jason's wife and minor children did not pose such a threat that Jones

should have been compelled to use a taser gun repeatedly.  Although deputy Jones had not

patted Jason down for weapons, there was no reason he could not have done so, given that

Jason was not resisting.[7]

According to the facts alleged by plaintiffs, at the time defendant Jones pulled Jason

Cook from the vehicle and tasered him, the only offenses of which Jones had knowledge

were the headlight infraction and the violations of Alabama's liquor laws, all of which are

misdemeanors.  *See* Ala. Code 1975 §§ 28-4-2 (unlawful possession of alcohol in dry county

is misdemeanor); 32-5A-330 (possession of open container of alcohol in motor vehicle is

misdemeanor); *Strickland*, 399 F. Supp. at 1287 (headlight infraction is a "minor traffic

infraction[]").  Although not mentioned in the Second Amended Complaint,[8] defendant Jones

---

[7]The court reiterates that for purposes of the Motion to Dismiss, the court is accepting as true, the allegations of plaintiffs' Second Amended Complaint.

[8]  The Second Amended Complaint states that Jason Cook was taken to jail "and booked for, among other things, resisting arrest."  (Doc. 31 ¶ 20.)  Defendant Jones argues that the Case Action Summaries offered in support of his Motion to Dismiss is properly before the court as judicial notice, "as they are public records or state court proceedings for which there can be no reasonable dispute."  (Doc. 36 at 5 n. 6 [citing *Cunningham v. District Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010)].)  Plaintiffs have not objected to the

and Bankhead have produced evidence showing that Jason Cook was arrested for possession of marijuana.  (*See* doc. 36-2 at 2.)  However, defendant Jones had not yet searched the vehicle when he tasered Jason and therefore was not aware of a potential narcotics violation. While defendant Bankhead characterizes Cook's charge of resisting arrest as a serious offense, (doc. 35 at 35), it is a misdemeanor under Alabama law.  Ala. Code 1975 § 13A-10-41.  Further, as previously stated, plaintiffs allege that Jason Cook was compliant with deputy Jones's instructions, except for when he could not deliver his hand to be handcuffed. Under the circumstances, a reasonable jury could find that applying this amount of force to a non-resisting suspect is excessive.[9]  *See Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (officer's initial single taser shock was justified to subdue plaintiff but the subsequent seven taser shocks over a two minute period were unjustified where officers made no attempt to handcuff or arrest pedestrian during shock cycle and pedestrian was not accused of any crime and posed no immediate threat to officers).

Further, the court finds that a reasonable jury could find that defendant Bankhead's use of brass knuckles and striking Jason Cook with a flashlight was also excessive. According to the facts alleged by plaintiffs,  Jason Cook was already handcuffed, and therefore an unlikely threat, when Bankhead struck him with brass knuckles and the

---

introduction of this evidence.

[9]    Plaintiffs also argue that the use of the taser amounted to deadly force.  (*See* doc. 48 at 7.)  However, the court concludes that Deputy Jones's use of the taser was arguably excessive, whether or not it amounted to deadly force.  Therefore, the court does not reach that question, but does note that other courts have considered the use of a taser to be non-lethal force.  *See Buckley v. Haddock*, 292 Fed. Appx. 791, 795 n.9 (11th Cir. Sept. 9, 2008).

flashlight.  Moreover, if the facts are true as alleged by plaintiffs, Jason Cook had just been

tased to the point that he was "slipping in and out of consciousness," (doc. 31 ¶ 17), making

any use of force on him even more unjustified.  Jason Cook did not pose a threat to Officer

Bankhead and, therefore, it was unnecessary for Officer Bankhead to strike Jason with brass

knuckles and with a flashlight.  *Fils v. City of Aventura*, ___ F.3d ___, 2011 WL 3189627,

at *13 (11th Cir. July 28, 2011) ("[U]nprovoked force against a non-hostile and non-violent

suspect who has not disobeyed instructions violates that suspect's rights under the Fourth

Amendment."); *Gutierrez*, 526 F.3d at 1333 (officer used excessive force when he punched

the plaintiff in the stomach while the plaintiff was handcuffed and not resisting arrest).

Officer Bankhead argues that plaintiffs do not allege that Bankhead knew that Jason

Cook was handcuffed when Bankhead struck him, and, therefore, the amount of force was

reasonable.  (Doc. 35 at 35.)  The court rejects this argument, as the case cited by Bankhead,

*Griffin v. City of Clanton, Alabama*, is factually distinguishable.  932 F. Supp. 1359 (M.D.

Ala. 1996).  In *Griffin*, the court held that an officer's use of pepper spray on an arrestee was

"not unreasonable" where the officer suspected the arrestee to be intoxicated, knew the

arrestee had already fled from officers once, and the officer arrived to a "chaotic" scene of

the arrestee "struggling with a number of officers."  *Id.* at 1369.  Only given all of these

factors did the court note that, although the arrestee was handcuffed when the officer used

pepper spray, the officer could not see the handcuffs because two other officers were on top

of the arrestee at the time.  *Id.*  These facts are not at all comparable to the facts at hand,

where there is no allegation that Jason Cook was in a struggle with Deputy Jones or any

35

other officer upon Bankhead's arrival to the scene and no allegation as to why Officer Bankhead would not notice that Cook was in handcuffs.  Accordingly, the court finds *Griffin* inapplicable.

Having found that plaintiff has made a sufficient showing of excessive force, the second step in the *Saucier* analysis requires the court to determine whether Officer Bankhead or Deputy Jones is entitled to qualified immunity because the law was not clearly established at the time of the arrest that the use of such force under the circumstances was excessive. Officer Bankhead and Deputy Sheriff Jones are not entitled to qualified immunity if, "at the time of the incident, every objectively reasonable police officer would have realized the acts violated clearly established federal law."  *Harris*, 433 F.3d at 812 (citations omitted).

"In the context of Fourth Amendment excessive force claims, [the Eleventh Circuit has] noted that generally no bright line exists for identifying when force is excessive; [the Eleventh Circuit has] therefore concluded that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity."  *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (citing *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  The narrow exception to this rule is where the plaintiff shows that "the official's conduct lies so obviously at the core of what the Fourth Amendment prohibits," and "was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point."  *Id.* (citations omitted).  Under either test, "pre-existing law must dictate, that is, truly compel (not just suggest or raise a question about),

36

the conclusion" that every like-situated reasonable officer would consider the officer's actions, in question, as constituting a violation of the law. *Id.* When reviewing caselaw in this context, the court is limited to decisions of the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the conduct occurred that were issued as of the date of the conduct in question. *Vinyard*, 311 F.3d at 1351-52, n.22.

In November 2008, when the incidents giving rise to this lawsuit occurred, no decision from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court clearly established that an officer's repeated use of a taser constituted excessive force under circumstances like these. In 2008, Eleventh Circuit excessive force case law addressing tasers had held that the use of a taser was justified against a belligerent or hostile suspect who had repeatedly ignored an officer's instructions. *Zivojinovich*, 525 F.3d at 1073; *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). However, the Eleventh Circuit did not address the use of a taser against a non-resisting suspect in a published case until 2009, when the court held that repeated tasering against a non-threatening, non-violent suspect amounted to excessive force. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). In *Fiorino*, after the court acknowledged that there was no case law on point clearly establishing the constitutional violation, nevertheless found that "the force employed was so utterly disproportionate to the level of force reasonably necessary that any reasonable officer would have recognized that his actions were unlawful." *Id.* at 908. The court here also finds that, despite the absence of caselaw dictating that it violates the Constitution to taser a suspect fourteen times while the suspect is pinned down to the ground,

unable to move, has complied with the officer's instructions, and is being arrested for a misdemeanor, every similarly situated reasonable officer would consider deputy Jones's actions to constitute excessive force.  The court finds that Jones's conduct "lies so obviously at the core of what the Fourth Amendment prohibits" that Jones is not entitled to qualified immunity, despite the absence of clearly established law on point in 2008.  *Priester*, 208 F.3d at 926; *see also see also Fils v. City of Aventura*, __ F.3d ___, 2011 WL 3189627, at *16 (11th Cir. July 28, 2011) (in tasering case, citing excessive force § 1983 cases outside of the tasering context which held that use of force against a cooperative, non-violent, and non-resisting suspect violated the suspect's Fourth Amendment rights, and noting that, even though the cited cases did not involve tasering, cases need only be "materially similar" to the case at hand, not identical, in order to conclude that the law was clearly established).

Next, the court also finds that Officer Bankhead is not entitled to qualified immunity on Jason Cook's excessive force claim.  In 2008, the law was clearly established that "a handcuffed, non-resisting defendant [had the] right to be free from excessive force." *Gutierrez*, 526 F.3d at 1333.  As previously discussed, according to the facts alleged, Jason Cook was not resisting and was in handcuffs when Officer Bankhead struck him with brass knuckles and a flashlight.  "By 1998, [Eleventh Circuit] precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued. . ." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002).  Striking a suspect who has already been placed in handcuffs, is cooperative and non-threatening is a plainly

gratuitous use of force, and every reasonable officer would conclude that such use of force is not protected by the Constitution.

Finally, the court notes that defendant Bankhead cannot be held liable for failing to intervene to stop Deputy Jones from using force on Jason Cook, because, according to the Second Amended Complaint, Bankhead was not on the scene when Deputy Jones pulled Jason from the car or tasered him.  (Doc. 31 ¶¶ 17-18.)  An officer may also be held liable for failing to intervene when another uses excessive force, but only if the officer is in a position to intervene and fails to do so.  *Priester*, 208 F.3d at 924.  Plaintiffs do not allege that Deputy Jones used force against plaintiffs after Officer Bankhead arrived on the scene. Since plaintiffs do not allege that Bankhead was on the scene when Deputy Jones used force on Mr. Cook, defendant Bankhead was not in a position to intervene to stop Deputy Jones and therefore cannot be held liable for Deputy Jones's conduct.

In sum, Deputy Jones is not entitled to qualified immunity for the excessive force claim concerning his use of the taser, and Officer Bankhead is also not entitled to qualified immunity for his use of force against Jason Cook.  These excessive force claims in Count III, therefore, are not due to be dismissed.  However, the failure to intervene claim brought against Officer Bankhead is due to be dismissed.

### iv) Equitable Relief

In the Second Amended Complaint, plaintiffs state that they seek to "be awarded appropriate declaratory and injunctive relief," among other forms of relief.  (Doc. 31 ¶ 51.) Other than this statement, plaintiffs do not elaborate on their request for equitable relief.

Plaintiffs lack standing for their claims for equitable relief.  In order to invoke federal jurisdiction, plaintiffs must allege an actual case or controversy.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A plaintiff "must demonstrate a personal stake in the outcome," and must show that he has sustained or is in immediately in danger of sustaining some direct injury as the result of the challenged official conduct. . ."  *Id.*  Plaintiffs here have failed to make such any such allegation, and, therefore, lack standing for equitable relief.  *See id.* at 105.

Further, "[t]o be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation."  *Newman v. State of Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)).  "He must then demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law."  *Id.* (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959)).  Assuming plaintiffs could prove that a constitutional violation occurred, plaintiffs would not be entitled to an injunction because they have not pled a continuing irreparable injury and an adequate remedy at law exists, namely, a suit for money damages. *See Lyons*, 461 U.S. at 110 (plaintiff who was subjected to chokehold during traffic stop by police officers and who sought injunction against city of Los Angeles barring the use of chokeholds lacked standing for injunctive relief where he did not show "any real or immediate threat that [he] will be wronged again" and plaintiff's challenge of the officers' conduct in a suit for damages was an adequate remedy at law).

40

### 2. State Law Claims

Plaintiffs allege that Jones and Bankhead are liable under state law for "Unlawful Entry and Search/False Arrest/False Imprisonment," (Count IV), Assault and Battery, (Count V), and Negligence, (Count VI).  (Doc. 31 ¶¶ 42-49.)

#### a. Deputy Jones

Defendant Deputy Jones moves to dismiss the state law claims against him on the basis of absolute immunity.  (Doc. 36 pp. 33-37.)  In their opposition brief, (doc. 48), plaintiffs do not respond to this argument.

The Alabama Constitution grants executive branch officers immunity from suit.  *See* Ala. Const. Art. I, § 14; *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).  "Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14 [of the Alabama Constitution]."  *Tinney*, 77 F.3d at 383 (citing *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1997)); *see also Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994) (noting that, under Alabama law, "deputy sheriffs are immune from suit to the same extent as sheriffs").  The Alabama Supreme Court has made clear that the only exceptions to a sheriff's immunity from suit are actions brought to enjoin the sheriff's (or sheriff deputy's) conduct.  *Hatfield*, 652 So. 2d at 1143.  Specifically, the only exceptions to the sovereign immunity of a sheriff or sheriff's deputy, such as defendant Jones, are  actions brought:

> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or

> under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Hatfield*, 652 So. 2d at 1143.  This immunity applies even when the deputy sheriff is sued for negligence or bad faith.  *Id.* at 1144. Plaintiffs' state law claims of unlawful entry and search, false arrest, false imprisonment, assault and battery, and negligence do not fall under any of the specific exceptions to the sheriff's immunity.  Accordingly, plaintiffs' claims against defendant Jones for money damages are due to be dismissed.

To the extent plaintiffs do seek an injunction or equitable relief under Alabama law against defendant Jones, their claims are still due to be dismissed, as defendant Jones argues. (Doc. 36 at 35.)  Plaintiffs seek "appropriate declaratory and injunctive relief," (doc. 31 ¶ 51(a)), but do not allege that they seek construction of a statute.  Even assuming that plaintiffs' Second Amended Complaint seeks permanent injunctive relief from a constitutional violation, the claim against Jones is due to be dismissed for lack of standing, as previously discussed.  *Newman*, 683 F.2d at 1319; *Lyons*, 461 U.S. at 110.

For these reasons, plaintiffs' state law claims against defendant Jones are due to be dismissed.  Also, to the extent plaintiffs seek an injunction, whether under federal or state law, the plaintiffs' claim is due to be dismissed for lack of standing.

### b. Officer Bankhead

Defendant Bankhead moves to dismiss Count IV in part and Count V in part. Bankhead does not move to dismiss Count VI.

## Count IV: Unlawful Entry and Search, False Arrest, False Imprisonment

Under this Count, plaintiffs allege that Jones and Bankhead "seized plaintiffs without probable cause, searched the person of Defendant Jason Cook without probable cause or permission, searched the vehicle of Jason and Jennifer Cook without probable cause or permission, probable cause, and failed to release Jennifer Cook and her children when they should have." (Doc. 31 ¶ 42.) Defendant Bankhead moves to dismiss the state law unlawful entry and search and false arrest claims, but does not move to dismiss plaintiffs' false imprisonment claim. (Doc. 35 pp. 38-40; *see* Doc. 38 p. 6.)

### 1. Unlawful Entry and Search

"A warrantless search. . . is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a few specific exceptions recognized under the law." *Ex parte Kelley*, 870 So. 2d 711, 718 (Ala. 2003). One of the exceptions to a warrantless search recognized by Alabama courts is a search incident to arrest based on probable cause. *Id.*; *State v. Mitchell*, 722 So. 2d 814, 821 (Ala. Crim. App. 1998) (arresting officer's search of the appellant and subsequent seizure of cocaine found valid where officer smelled alcohol on defendant and found defendant's speech to be slurred, giving him probable cause to arrest the defendant for public intoxication). Alabama courts also allow for warrantless searches of vehicles based on probable cause alone under the "automobile exception." *Jackson v. State*, __ So. 3d __, 2010 WL 5130749, at *1 (Ala. Crim. App. Dec. 17, 2010) (officer who conducted stop of defendants' car for violation of noise ordinance had

probable cause to arrest and search the car where officer smelled a strong odor of marijuana, saw an open beer can and found drugs in defendant's pocket).

Under Alabama law, probable cause for a search exists when the facts and circumstances known to the officer are sufficient to cause a person of reasonable caution to conclude that contraband will likely be found in the place to be searched. *State v. Black*, 987 So. 2d 1177, 1180 (Ala. Crim. App. 2006). As previously discussed, defendants Jones and Bankhead had probable cause to believe that violations of Alabama law had been committed with regard to the open alcohol container in the car, giving defendants probable cause to arrest Jason Cook and to search his person and the vehicle. Accordingly, plaintiffs' unlawful search claim against defendant Bankhead under state law is due to be dismissed.

### 2. False Arrest

False arrest under Alabama law requires proof that the defendant caused an arrest without probable cause. *Walker v. City of Huntsville*, __ So. 3d __, 2010 WL 3798070, at *16 (Ala. 2010) (citations omitted). "[F]or a detention to be valid, the officer must reasonably, and in good faith, suspect the individual detained of being involved in some form of criminality. . . Reasonable ground for belief of guilt, or probable cause, exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *Higgins v. Wal-Mart Stores, Inc.*, 512 So. 2d 766, 768 (Ala. 1987)) (internal quotation marks omitted).

Because the court has found that probable cause existed to support the arrest of Jason Cook, the false arrest claim asserted against defendant Bankhead is due to be dismissed.

### Count V: Assault and Battery

Under this Count, plaintiffs allege that Jones and Bankhead "assaulted, battered and used excessive force on Plaintiff, Jason Cook, or failed to intervene to protect him from the unlawful actions of others despite the opportunity to do so." (Doc. 31 ¶ 45.) Bankhead does not move to dismiss the assault and battery claim brought against him by Jason Cook and has filed an Answer responding to that claim. (Doc. 38 p. 6.) Bankhead moves to dismiss the assault and battery claim to the extent it is asserted on behalf of Jennifer, Kalum, or Griffin Cook. (Doc. 35 at 41.)

"'The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'" *Walker*, 2010 WL 3798070, at *17 (quoting *Harper v. Winston County*, 892 So. 2d 346, 353 (Ala. 2004)). However, "'[i]n making the arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest.'" *Id.* (quoting *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995)). Plaintiffs do not allege that Jones or Bankhead touched plaintiffs Jennifer Cook, Kalum Cook, or Griffin Cook. Accordingly, to the extent the Second Amended Complaint asserts assault and battery claims against defendant Bankhead on behalf of Jennifer, Kalum, or Griffin Cook, they are due to be dismissed.

45

## C. DEFENDANT CITY OF SULLIGENT

Under Count I, Unlawful Seizure, plaintiffs claim,

The unlawful actions of the Defendant Michael Bankhead were pursuant to the customs and policies of the City of Sulligent and Willis Stanford who is the police chief.  Prior to the assault of plaintiff, these Defendants permitted, encouraged, and ratified a pattern and practice of misconduct including unjustified, unreasonable, and unlawful seizure, in that they:

a. failed to discipline or prosecute or in any manner deal with known incidents of misconduct, including excessive force; and

b. refused to investigate complaints of unlawful seizure, and instead, officially claimed such incidents were justified and proper.

(Doc. 31 ¶ 31.)  Plaintiffs claim that these failures are policies and customs of the defendants, which caused defendants Bankhead and Jones to believe that unlawful seizure would be tolerated and that complaints of unlawful seizure would not be properly investigated, "with the foreseeable result that officers and/or deputies would use unlawful seizure on Plaintiffs. . ." (*Id.*  ¶ 32.)  Plaintiffs make the same allegations regarding the existence of a custom or policy of the City which caused defendants to believe that unlawful actions would be tolerated in Count II, Unlawful Entry and Search, and Count III, Excessive Force.  (*Id.*  ¶¶ 35-36, 39-40.)

"The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  "[A] municipality may be held liable for the actions of a police officer ***only*** when municipal 'official policy' causes a constitutional violation." *Id*. (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978))(emphasis added).  The City "is not automatically liable under section 1983 even if

it inadequately trained or supervised its police officers and those officers violated [plaintiff's] constitutional rights." *Id*. However, the City may be liable under section 1983 when "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Id.* (citations omitted). Because a municipality generally does not have an express policy of inadequately training or supervising its employees, "plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants . . . ." *Id.* "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

Defendant City of Sulligent argues that the unlawful seizure, unlawful entry and search, and excessive force claims against the City are due to be dismissed for failure to comply with the *Twombly* and *Iqbal* pleading standards. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotations and citations omitted); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Defendant City of Sulligent writes:

47

> [V]oid from the complaint are any *factual* allegations, as opposed to impermissible legal conclusory statements, showing that Sulligent itself caused the Fourth Amendment violations at issue. . . There are similarly no *factual* allegations of any officially promulgated policy of Sulligent, or any identification of any unofficial custom or policy (through repeated acts of the final policymaker of Sulligent), which caused the alleged violation of the plaintiffs' Fourth Amendment rights.

(Doc. 34 at 33.)  Defendant City of Sulligent continues, arguing that plaintiffs' "boilerplate allegations . . . are nothing more than the very type of legal conclusions masquerading as facts, naked assertions, and formulaic allegations" which, under *Twombly* and its progeny, are insufficient to survive a motion to dismiss for failure to state a claim.  (*Id.* at 34.)

The court agrees with defendant City of Sulligent that plaintiffs' Second Amended Complaint does not allege sufficient factual content required under *Twombly* and *Iqbal* regarding the existence of a policy or custom of the City that caused plaintiffs' injuries.  The following statements repeated in Counts I, II, and III exemplify boilerplate pleading and formulaic recitation of the elements of a claim: that "[t]he unlawful actions of the Defendant Michael Bankhead were pursuant to the customs and policies of the City of Sulligent and Willis Stanford who is the police chief", (doc. 31 ¶¶ 31, 35, 39); that the defendants "permitted, encouraged, and ratified a pattern and practice of misconduct" including unlawful seizure, unlawful entry and searches, and excessive use of force, (*id.* ¶¶ 31, 35, 39); and that these acts and omissions "are policies and customs of these Defendants" which caused defendants Bankhead and Jones to believe that acts of unlawful seizure, unlawful entry and searches, and excessive uses of force would be tolerated and complaints would not

48

be investigated, (*id.* ¶¶ 32, 36, 40).  The Second Amended Complaint contains absolutely no factual content in support of these conclusory statements.

Plaintiffs argue in response that it is impossible for the plaintiffs to know facts concerning the policies and practices of the City "without first conducting at least some basic discovery."  (Doc. 50 at 11.)  However, Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S. Ct. at 1950.  Plaintiffs are  not entitled to conduct discovery so that they can meet the pleading requirements of Rule 8.  Accordingly, plaintiffs' claims against the City are due to be dismissed for failure to state a claim.[10]

_____

[10]  Even if plaintiffs can replead their complaint with sufficient factual allegations against the City, the § 1983 unlawful seizure and unlawful entry and search claims against the City are still due to be dismissed because, as previously discussed, the facts do not show that the plaintiffs' constitutional rights were violated with respect to these claims.  Where no constitutional right has been violated, there is no basis on which to attach liability to the City because no injury has occurred. *See Am. Fed. Labor and Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) ("A municipality may only be held liable under § 1983 when one of its policies causes a constitutional injury.").

**CONCLUSION**

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 30th day of September, 2011.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE